UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SCOTT W. OUWELEEN,

    Plaintiff,

v.

CLERK CREDIT SYSTEMS LLC,

    Defendant.

_____/

Case No. 8:26-cv-00279

**JURY TRIAL DEMANDED**

# COMPLAINT

NOW comes SCOTT W. OUWELEEN ("Plaintiff"), by and through the undersigned, complaining as to the conduct of CLERK CREDIT SYSTEMS, LLC ("Defendant"), as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action for damages pursuant to the Credit Repair Organizations Act ("CROA") under 15 U.S.C. § 1679 *et seq.* as well as the Florida Credit Services Organization Act ("FCSOA") under Fla. Stat. § 817.7001 *et seq.* in connection with Defendant's unlawful conduct.

### JURISDICTION AND VENUE

1

2. This action arises under and is brought pursuant to the CROA. Subject matter jurisdiction is conferred upon this Court by 15 U.S.C §1679, as well as 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendant conducts business within, and a substantial portion of the events or omissions giving rise to the claims occurred within, the Middle District of Florida.

## PARTIES

4. Plaintiff is a natural "person," as defined by 47 U.S.C. §153(39), residing in Lakeland, Florida, which lies within the Middle District of Florida.

5. Defendant is a credit repair organization offering consumers the ability to improve their credit through its offered services. Defendant is a limited liability company organized under the laws of Delaware with its principal place of business located at 600 North Broad Street, Suite 5 # 391, Middletown, Delaware 19709.

6. Defendant is a "person" as defined by 47 U.S.C. §153(39).

7. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

## FACTS SUPPORTING CAUSES OF ACTION

8. In approximately September of 2023, Plaintiff was looking for assistance with improving her credit score, and began looking into various credit repair companies for assistance.

9. Plaintiff then came across Defendant's services, which are represented online as helping consumers "say goodbye to poor credit, and hello to loan approvals."

10. Plaintiff and Defendant subsequently spoke over the phone regarding Defendant's services on or about July 8, 2025

11. During such phone call, Defendant represented that its services would improve Plaintiff's credit, as Defendant would assess the information that was negatively impacting Plaintiff's credit, and subsequently submit disputes to the credit reporting agencies seeking to have that information removed.

12. As soon as Defendant viewed Plaintiff's credit report, it began claiming that it would be able to get virtually all derogatory information removed, not because it was inaccurate or otherwise properly subject to removal, but because the "paperwork was completed incorrectly" – a fact it would have no basis to know simply by reviewing Plaintiff's credit report.

13. Defendant further represented that all of this information would be removed within 45 days of signing up with Defendant, and that Plaintiff's credit score would improve substantially as a result.

14. Finding desirable the nature of Defendant's representations, Plaintiff subsequently entered into a "contract" with Defendant for its provision of services on or about July 8, 2025.

15. Plaintiff was then assessed a nearly $400 upfront charge, and was required to submit further monthly payments totaling approximately $95 per month.

16. In addition to such contractually-referenced amounts, Plaintiff was then subjected to additional hidden and undisclosed junk fees, which upon information and belief were collected from Plaintiff in connection with illusory services.

17. Plaintiff maintained his payments to Defendant for months.

18. Despite Plaintiff's maintenance of her payments, Defendant failed to deliver the results or provide the services in the manner represented.

19. Although Defendant represented that Plaintiff's credit score would improve through its services, Defendant's services did not have this impact.

20. Defendant's services failed to provide any meaningful improvement to Plaintiff's credit despite Plaintiff paying for Defendant's services for months.

21. Defendant was unable to get the extent of negative information removed from Plaintiff's credit as represented.

22. Upon information and belief, Defendant failed to get the information removed because it was challenging items that were accurate or which otherwise had no reasonable basis to be removed from Plaintiff's credit.

23. Defendant further falsely, deceptively, and misleadingly represented the increase in credit score that Plaintiff would experience, and did so in order to extract payments from Plaintiff in connection with services whose qualities and benefits were misrepresented to Plaintiff.

24. Defendant further represented that it would, and upon information and belief subsequently did, submit disputes challenging information on Plaintiff's credit report without any reasonable indication that such information was inaccurate, obsolete, or could otherwise reasonably be removed from Plaintiff's credit reports.

25. Defendant thus falsely, deceptively, and misleadingly represented to Plaintiff the extent to which it could have the accurate and correctly-reporting information removed from his credit.

26. Defendant's conduct evinces an overarching deceptive business model that actively commits fraud, and similarly attempts to commit fraud, on unwitting consumers, as Defendant's conduct is designed to make vulnerable consumers believe they will experience results that are completely unrealistic and which Defendant ultimately fails to deliver and failed to deliver to Plaintiff.

27. Upon information and belief, Defendant is engaged in a pattern and practice of misrepresenting the results consumers can expect through its services on a wide and persistent basis and engages in this conduct as a matter of course with all consumers with which it deals.

28. Plaintiff has suffered concrete harm as a result of Defendant's actions, including but not limited to, emotional distress, aggravation, mental anguish, pecuniary loss stemming from the payments made to Defendant for deficient and misrepresented services, further out of pocket expenses, as well as numerous violations of his state and federally protected interests to be free from deceptive and misleading conduct on the part of purported credit repair organizations.

## COUNT I – VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT

29. Plaintiff repeats and realleges paragraphs 1 through 28 as though fully set forth herein.

30. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1679a(1) of the CROA.

31. Defendant is a "credit repair organization" as defined by §1679a(3) of the CROA, as it is a person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving a consumer's credit, credit history, or credit rating, or providing assistance to any consumer with regard to any activity or service for the purpose of improving a consumer's credit.

### a. Violations of CROA § 1679b(a)

32. The CROA, pursuant to 15 U.S.C. § 1679b(a)(3) prohibits any person from "mak[ing] or us[ing] any untrue or misleading representation of the services of the

credit repair organization." Additionally, pursuant to 15 U.S.C. § 1679b(a)(4), any person is prohibited from "engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

33. Defendant violated the above provisions of the CROA through the false and deceptive representations it made to Plaintiff regarding the efficacy of its offered services. Around the time Plaintiff signed up for Defendant's services and upon speaking with a representative of Defendant's over the phone around July 8, 2025, Defendant represented that Plaintiff would experience an increase in his credit score, and that such results would be delivered shortly after Plaintiff signed up. Defendant subsequently failed to deliver these results despite Plaintiff making payments for months. Defendant's failure to deliver the represented results in the manner and time frame represented demonstrates the false, misleading, and fraudulent nature of the representations it made to induce Plaintiff to sign up for Defendant's services.

34. Defendant further violated the above provisions of the CROA through its general misrepresentations regarding the parameters of its dispute capabilities and the information that could reasonably be challenged and removed from Plaintiff's credit reports through Defendant's disputes. Around the time Plaintiff signed up for Defendant's services and spoke with a representative of Defendant's over the phone

on or about July 8, 2025, Defendant represented and suggested to Plaintiff that it would be able to remove any information from Plaintiff's credit reports, regardless of whether it was inaccurate, obsolete, or otherwise could be removed from Plaintiff's credit. This is an inherently deceptive and misleading representation, as only inaccurate or obsolete information can be removed from consumers' credit profiles. Defendant misrepresented the information it could have removed in order to convince Plaintiff it could remove the information that was harming his credit and convince him to use Defendant's services, despite knowing the extent to which it could not reasonably have the extent of desired information removed from Plaintiff's credit.

35. Defendant further violated the above provisions of the CROA through its assessment of various hidden and undisclosed junk fees. Defendant assessed these deceptive and misleading fees so as to deceptively justify its retention of payments for either unperformed services or services which did not deserve the payments demanded by Defendant.

### b. Violations of CROA § 1679b(b)

36. The CROA, pursuant to 15 U.S.C. § 1679b(b), provides that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

37. Defendant violated § 1679b(b) through its charging and receiving of money for services agreed to perform before such services were fully performed. Defendant improperly charged Plaintiff upfront fees before performing any work for Plaintiff. Further, Defendant repeatedly and throughout the life of the parties' dealings charged Plaintiff for generally deficient and misrepresented services that failed to deliver the promised results. Defendant's charging of premature fees denied Plaintiff the time value of money associated with the premature fees, and further allowed Defendant to recoup payments for its services despite not performing the represented services or delivering the represented results.

### c. Violation of CROA § 1679c

38. The CROA, pursuant to 15 U.S.C. § 1679c, outlines various disclosures that CROs must provide to consumers prior to entering into contracts with consumers, further requiring that such disclosures be provided in a document separate from the contract at issue.

39. Defendant violated § 1679c through its provision of the required disclosures contemporaneously with Plaintiff's signing of the contract and in the same document which contained Plaintiff's "contract." Defendant's burying of these disclosures and failure to separate them from the rest of the contractual documents in a manner contrary to the CROA's requirement had the downstream negative consequence of preventing Plaintiff from clearly and conspicuously viewing the disclosures,

including the disclosure that "neither you nor any 'credit repair' company or credit repair organization has the right to have accurate, current, and verifiable information removed from your credit report," which run directly contrary to the way in which Defendant held its services out to Plaintiff when inducing Plaintiff to sign up. Had Defendant complied with the disclosure requirements, Plaintiff would have been in a better position to realize the fraudulent and deceptive nature of Defendant's representations regarding its dispute capabilities and the information Plaintiff could reasonably have removed from his credit reports.

WHEREFORE, Plaintiff, SCOTT W. OUWELEEN, respectfully requests that the Honorable Court enter judgment in his favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

b. Awarding Plaintiff actual damages to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(1);

c. Awarding Plaintiff punitive damages, in an amount to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(2)(A);

d. Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1679g(a)(3); and

e. Awarding any other relief as the Honorable Court deems just and appropriate.

### COUNT II – VIOLATIONS OF THE FLORIDA CREDIT SERVICE ORGANIZATIONS ACT

40. Plaintiff restates and realleges paragraphs 1 through 28 as though fully set forth herein.

41. Plaintiff is a "buyer" as defined by Fla. Stat. § 817.7001(1).

42. Defendant is a "credit service organization" as defined by Fla. Stat. § 817.7001(2)(a).

### a. Violation of FCSOA § 817.7005

43. Pursuant to Fla. Stat. § 817.7005(4), a credit service organization cannot "[m]ake or use any false or misleading representations or omit any material fact in the offer or sale of the services of a credit service organization or engage, directly or indirectly, in any act, practice, or course of business that operates or would operate as fraud or deception upon any person in connection with the offer or sale of the services of a credit service organization, notwithstanding the absence of reliance by the buyer."

44. Defendant violated the above referenced provision of the FCSOA in much the same way it violated 15 U.S.C. §§ 1679b(a)(3)-(4).

WHEREFORE, Plaintiff, SCOTT W. OUWELEEN, respectfully requests that the Honorable Court enter judgment in his favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff actual damages pursuant to Fla. Stat. § 817.706(1);

c. Awarding Plaintiff punitive damages pursuant to Fla. Stat. § 817.706(1);

    d. Awarding Plaintiff's costs and reasonable attorney fees, pursuant to Fla. Stat. § 817.706(1); and,

    e. Awarding any other relief as the Honorable Court deems just and appropriate.

**Plaintiff demands trial by jury.**

Dated: January 30, 2026　　　　　　　　　　Respectfully Submitted,

　　　　　　　　　　　　　　　　　　　　　　*/s/Maxwell Brooks*
　　　　　　　　　　　　　　　　　　　　　　Maxwell Brooks, Esq.
　　　　　　　　　　　　　　　　　　　　　　Counsel for Plaintiff
　　　　　　　　　　　　　　　　　　　　　　Sulaiman Law Group, LTD
　　　　　　　　　　　　　　　　　　　　　　2500 S. Highland Avenue, Suite 200
　　　　　　　　　　　　　　　　　　　　　　Lombard, Illinois 60148
　　　　　　　　　　　　　　　　　　　　　　Telephone:(630) 575-8181
　　　　　　　　　　　　　　　　　　　　　　Fax: (630) 575-8188
　　　　　　　　　　　　　　　　　　　　　　mbrooks@sulaimanlaw.com